IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT W. KOHUT,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )          No. 09 C 4321
                                    )
HOME DEPOT U.S.A., INC.,            )
                                    )
            Defendant.              )

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Robert W. Kohut ("Kohut") alleges that defendant Home Depot U.S.A., Inc.

("Home Depot") discriminated against him based on race (Caucasian) and age (59) when it

terminated his employment on June 8, 2007, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the Age and Discrimination in Employment

Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"). Now pending before the court is Home Depot's

motion for summary judgment. (Dkt. No. 32.) For the reasons set forth below, Home Depot's

motion is granted.

<u>BACKGROUND</u>

Kohut, who is Caucasian, was hired by Home Depot in 1996 as a Sales Associate in the

Plumbing Department at its Brickyard, Illinois store. (Dkt. No. 34 ("Home Depot's SMF") ¶ 3.)

Kohut was forty-eight years old at the time he was hired by Home Depot. (*Id.* ¶ 4.) In March

1999, he was promoted to the position of Department Supervisor in the Paint Department in the

Brickyard store, and he thereafter held various Department Supervisor positions at the Brickyard

store.  (*Id.* ¶¶ 6-7.)  In October 2001, Kohut was promoted to the position of Assistant Store Manager of the Elston, Illinois store.  (*Id.* ¶ 7.)  From August 2006 through June 8, 2007, Kohut served in the position of Merchandise Assistant Store Manager at the Elston store.  (*Id.* ¶¶ 10, 56.)  At all times relevant to Kohut's claims in this lawsuit, the Store Manager of the Elston store was Lissett Urso ("Urso") and the Human Resources Manager of the Elston store was Latasha Reynolds ("Reynolds").  (*Id.* ¶¶ 19, 24.)

1.    Home Depot's Policies

A.    Code of Conduct: Standards of Conduct

Home Depot maintains a document titled "Code of Conduct: Manager's Guide 2007" that provides "common-sense rules of conduct that are necessary for orderly and efficient operations."  (Home Depot's SMF ¶ 11 (citing Home Depot's Ex. 4 ("Code of Conduct") at 2.) Under its "Standards of Conduct" section, the Code of Conduct expressly states,

> *This Code of Conduct does not create a contract between The Home Depot and any of its associates. . . . The Home Depot and the associate each continue to have the absolute authority to terminate the employment relationship at will. The employment relationship may be terminated with or without cause and with or without prior notice.*

(Code of Conduct 3 (emphasis in original); Home Depot's SMF ¶ 15.)  The Code of Conduct further states,

> The Code of Conduct provides examples of Major Work Rule Violations, which are violations considered to be so severe in nature that they would normally result in termination for a first offense, and Minor Work Rule Violations, which are violations considered to be unacceptable behaviors in the workplace and would normally result in discipline and may individually or cumulatively result in termination of employment depending on the seriousness of the offense(s).
>
> * * *
>
> Any associate who violates a rule of conduct may be disciplined up to and including

2

termination of employment. The reasons listed for termination or discipline are examples only and are not meant to include and *do not* in fact include all reasons for which an associate may be disciplined or discharged.

(Code of Conduct 2-3 (emphasis in original); Home Depot's SMF ¶ 15.)

The "Standards of Conduct" section of the Code of Conduct also includes a section titled "Respect," which states:

"Respect for all people" is one of The Home Depot's core values. The Company is committed to providing an environment of mutual respect, free of harassment and discrimination for our associates, customers and vendors. Associates are expected to treat fellow associates, customers and vendors with courtesy and to resolve any differences in a professional, non-abusive, non-inflammatory and non-threatening manner. Associates are responsible for their own behavior and for understanding how others may perceive their conduct in the workplace. Conduct that may be acceptable outside of the work environment may not be acceptable in the workplace.

(Code of Conduct 7 ("Respect Policy"); Home Depot's SMF ¶ 17.)

  B.  <u>Major Work Rule Violations and Minor Work Rule Violations</u>

In a section titled "Major Work Rule Violations," the Code of Conduct lists "[e]xamples of Major Work Rule Violations." (Code of Conduct 10.) One sub-section titled "Discrimination or Harassment" states in relevant part:

- Examples of conduct that could be considered harassment or disrespectful behavior include but are not limited to: directing abusive or obscene language to fellow associates, customers or vendors; offensive jokes; threats of termination; or willfully creating circumstances that would make the workplace intolerable

- Treating a fellow associate, customer or vendor in an abusive, threatening or inflammatory manner

(Code of Conduct 13; Dkt. No. 40 ("Home Depot's Resp. to Kohut's Add'l Facts") ¶ 91.)

Under the section titled "Minor Work Rule Violations," the Code of Conduct describes a "Respect Violation" as:

3

- Failing to treat associates, customers, or vendors with respect or engaging in other inappropriate conduct toward others

- Failing to notify a member of a Home Depot management team, a member of Human Resources or a designated Company resource of discrimination or harassment

(Code of Conduct 25; *see also* Home Depot's Resp. to Kohut's Add'l Facts ¶ 91.)

      C.     <u>Manager's Guide to Investigation and Discipline</u>

The Code of Conduct also includes a section titled "Manager's Guide to Investigation and to Discipline." (Code of Conduct 26-34 ("Manager's Guide").) This section includes "guidelines" for conducting an investigation and "standard disciplinary processes" employed by Home Depot. (Code of Conduct 26, 29.)

For example, the Manager's Guide recommends that managers investigating a possible violation of the Code of Conduct should "[c]onduct a thorough investigation in partnership with Human Resources, the management team, or an Asset Protection Manager as appropriate so that the final outcome is based upon facts and not perception, hearsay, or speculation." (Code of Conduct 26-27; *see also* Dkt. No. 38 at 20-25 ("Kohut's Add'l Facts") ¶ 81; Home Depot's Resp. to Kohut's Add'l Facts ¶ 81.) The Manager's Guide further advises "[b]e sure to give the associate who has been accused of wrongdoing an opportunity to tell his/her side of the situation" and "[b]e sure to obtain, create and maintain appropriate, thorough documentation (detailed witness statements, etc.)." (Code of Conduct 27; *see also* Kohut's Add'l Facts ¶¶ 82-83; Home Depot's Resp. to Kohut's Add'l Facts ¶¶ 82-83.)

"Once the investigation is completed and it has been determined that a violation requiring discipline has occurred," the Manager's Guide states "the Investigator will need to assess the violation to determine the appropriate disciplinary action to take." (Code of Conduct 28.) The

first step in this process involves determining if the violation is a Major Work Rule Violation or a Minor Work Rule Violation. (*Id.*; Kohut's Add'l Facts ¶ 88.) The Manager's Guide describes Major Work Rule Violations as violations "considered to be so severe in nature that a termination would normally result for a first offense." (Code of Conduct 28; Kohut's Add'l Facts ¶ 89.) The Manager's Guide describes Minor Work Rule Violations as violations "considered to be unacceptable behavior in the workplace and would normally result in disciplinary action up to and including termination in conjunction with other offenses." (Code of Conduct 28; Kohut's Add'l Facts ¶ 90.) The "Discipline Guidelines" sub-section of the Manager's Guide also reiterates:

> The Company reserves the right to take disciplinary action at any time up to and including termination of employment based on the Company's employment-at-will policy. *The employment-at-will policy provides that an associate is free to terminate his/her relationship with the Company and the Company is likewise free to terminate its relationship with the associate at any time with or without cause and without notice.*

(Code of Conduct 29 (emphasis in original); *see also* Home Depot's Resp. to Kohut's Add'l Facts ¶ 81.)

Finally, Home Depot's "Discipline Guidelines" describe "two different forms [designed] to achieve accurate documentation of disciplinary actions taken with regard to Code of Conduct violations." (Code of Conduct 29.) In relevant part, a "Discipline Notice" is described as follows:

> A Discipline Notice [unlike a Discipline Process Tracking form] provides written notice to an associate when a counseling, final counseling or termination session is being conducted. An associate receiving a Discipline Notice will be asked to sign the form as acknowledgment that the notice was provided and the disciplinary session took place. If an associate refuses to sign a Discipline Notice, the manager issuing the notice must indicate on the form the associate's refusal ("Associate Refuses to Sign") and sign and date the notice. A copy should be given to the

associate and a copy should be placed in the associate's personnel file.

(Code of Conduct 30; Home Depot's Resp. to Kohut's Add'l Facts ¶ 93.)

2.    Kohut's Violations of Home Depot's Policies

On November 1, 2006, Damaris Cortes ("Cortes"), a former Loss Prevention Associate, complained to Reynolds that Kohut told her he would "slap her across the face if she ever waved him away in public."  (Home Depot's SMF ¶ 19.)  Reynolds investigated Cortes's complaint and interviewed all of the witnesses identified by Cortes.  (*Id.* ¶¶ 20-21.)  Each witnesses who heard Kohut's comment agreed that Kohut told Cortes he would "slap her."  (*Id.* ¶ 22.)  Kohut himself reported saying to Cortes "if she ever did that again, I would slap her across the face."  (*Id.* ¶ 23.)  On November 10, 2006, Urso prepared a Final Counseling Discipline Notice for a Minor Violation of Home Depot's Respect Policy.  (*Id.* ¶¶ 24, 27).  The parties dispute whether Kohut ever received a copy of this document.  (Dkt. No. 38 at 1-20 ("Kohut's Resp. to Home Depot's SMF") ¶¶ 26-27.)[1]  However, Kohut admits that his conduct toward Cortes on November 1, 2006 was a violation of Home Depot's Respect Policy, that he met with Urso about the incident, that he knew Urso "was not happy with [him]," and that he understood Urso "couldn't afford to have that kind of stuff happen and that I shouldn't have done it."  (Home Depot's SMF ¶ 33.)

---

[1] The form itself is signed "Refuse to Refuse" in the space for the disciplined employee's signature.  (Home Depot's Ex. 7.)  Urso has testified via affidavit that Kohut refused to sign the Final Counseling Discipline Notice on November10, 2006, at which point she "documented his refusal."  (*See* Home Depot's SMF ¶ 26.)  Kohut testified at his deposition that he did not refuse to sign the form, and that he "never saw it before."  (*See* Kohut's Resp. to Home Depot's SMF ¶ 26.)  Construing this disputed fact in the light most favorable to Kohut, as the court must do at the summary judgment stage, the court accepts that Kohut did not receive a copy of the Final Counseling Discipline Notice on November 10, 2006.

Six months later, on May 17, 2007, Receiving Supervisor Marilyn McKenzie ("McKenzie") complained to Reynolds that Kohut called her a "f*cking idiot" when he came into Receiving and could not find what he was looking for.  (*Id.* ¶ 35 (incorrectly identifying the date as May 27, 2007).)  Reynolds investigated McKenzie's complaint by interviewing McKenzie, Kohut, and Paint Associate David Hayes ("Hayes"),[2] who witnessed the encounter. (*Id.* ¶ 37.)  Both McKenzie and Hayes reported that Kohut had called McKenzie a "fucking idiot."  (*Id.* ¶ 38.)  In a written statement, Kohut recalled that he was generally "very angry" at the time of the encounter and that he "was yelling about why the stuff was back there, why I could find it when no one else could."  (*Id.* ¶ 39 (citing Home Depot's Ex. 8).)  Kohut also recalled "I don't believe I ever called Marilyn [McKenzie] or Erlene a 'fucking idiot,'" but he admitted "I may have said something like what fucking idiot would push this cart back into this corner."  (*Id.*)  Kohut further stated "I am almost 100% certain I did not call Marilyn a 'fucking idiot' directly" and "I have no excuse for losing my cool and calling whoever it was that pushed that cart back there a fucking idiot — again, I don't believe I directed that remark at any particular person."  (*Id.*)  Reynolds concluded that Kohut violated Home Depot's harassment policy "by directing abusive and obscene language to McKenzie."  (*Id.* ¶ 41.)

---

[2] Although the parties refer to this individual as "David Hayes" in their briefing, Kohut's written statement refers to an associate named "Derek Hayes" — of whom he "[has] no recollection . . . being there in Receiving" (Home Depot's Ex. 8) — and the Associate Issue Response Form generated by Home Depot in response to this event refers to an associate named "Derrick Hayes" (Home Depot's Ex. 9).  The court assumes all references are to the same individual.

3.      Kohut's Termination

After Reynolds reviewed the findings of her investigation with Urso on May 29, 2007,

Urso made the decision to recommend the termination of Kohut's employment based on the May

17, 2007 incident.  (Home Depot's SMF ¶ 48.)  Reynolds then began the approval process for

Kohut's termination by e-mailing the relevant investigation review template to former Regional

Human Resources Manager Michael Wong ("Wong").  (*Id.* ¶ 51.)  Both Wong and District

Manager Jeremiah George ("George") supported the decision to terminate Kohut, and forwarded

the investigation review template to former Employment Practices Manager Norma Gonzalez

("Gonzalez").  (*Id.* ¶ 52.)  Gonzalez summarized the findings of Reynolds's investigation of

Kohut and e-mailed her summary to the Human Resources Director for the Central Region,

James Benja ("Benja"), who also supported the decision to terminate Kohut.  (*Id.* ¶ 53.)  Kohut's

termination was also approved by Director of Associate Relations for the Northern Division,

Michael Esposito ("Esposito").  (*Id.* ¶ 54.)

After Kohut's termination was approved, his Termination Discipline Notice was

prepared, and Urso met with Kohut on June 8, 2007 to effectuate his termination.  (*Id.* ¶ 56.)

Checkboxes on the Termination Discipline Notice indicate that Kohut was terminated for a

Major Violation of the Respect Policy, and the Termination Discipline Notice further states:

> Based on the facts of the investigation, Robert Kohut violated the respect policy on
> 5/17/07 by directing obscene language toward an associate.  Kohut is aware that he
> is expected to speak to associates in a professional, non-abusive, and non-threatening
> manner based on a previous violation of the respect policy that occurred on 11/1/06.
>
> This behavior will result in termination.

(*Id.* ¶ 57 (citing Home Depot's Ex. 10).)

Kohut admits that he had a "good relationship" with Urso, and that she never made any

negative comments to Kohut about his age or race.  (Home Depot's SMF ¶ 49.)  Kohut was fifty-nine years old at the time of his termination.  (*Id.* ¶ 3.)  Urso is Hispanic and was thirty-eight years old at the time of Kohut's termination.  (Home Depot's Resp. to Kohut's Add'l Facts ¶ 85.)  Kohut did not have any relationship with Gonzalez, George, Wong, or Benja at the time of his termination.  (Home Depot's SMF ¶ 55.)

4.    Nathaniel Guy

Nathaniel Guy ("Guy"), who is African-American, was forty-three years old in May 2007. (Home Depot's SMF ¶ 44.)  At that time, Guy was also employed as an Assistant Sales Manager at the Elston store.  (*Id.* ¶ 43.)  On May 28, 2007, three Elston store employees reported to Reynolds that Guy used abusive language toward all of them.  (*Id.* ¶ 43.)  Reynolds investigated this complaint by taking statements from witnesses and from Guy.  (*Id.* ¶ 45.)  The investigation revealed that Guy made several inappropriate comments toward Associates, including "I am tired of people telling [me] how to do my fucking job," "fuck you," and "[h]ave them throw out all their mother fucking trash."  (*Id.* ¶ 46.)

Urso decided to recommend the termination of Guy's employment because he verbally admitted to using profanity toward subordinates.[3]  (*Id.* ¶ 50.)  Urso's recommendation to terminate Guy followed the same approval chain as Urso's recommendation to terminate Kohut,

---

[3] Kohut's denial of this fact is improper, as it does not "cite specific evidentiary materials justifying the denial."  *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000).  Rather than addressing Urso's decision to recommend Guy's termination in May 2007, the material cited by Kohut addresses the substance of Urso's communications with Guy during their "initial meeting," when Urso allegedly told Guy that an earlier disciplinary notice "might result in [him] being dismissed from [his] job."  (Kohut's Ex. A.)  Even if the court were to accept the statements set forth in Guy's notarized but unsworn affidavit, the cited material does not demonstrate a genuine issue of material fact.  The court therefore accepts Home Depot's statement of fact on this point.

beginning with Reynolds e-mailing both Guy's and Kohut's investigation review templates to

Wong and ending with Benja's approval of both termination decisions. (*Id.* ¶¶ 51-53.)[4] Like

Kohut's Termination Discipline Notice, Guy's Termination Discipline Notice indicates that Guy

was terminated for a Major Violation of the Respect Policy, and further states:

> Based on the facts of the investigation, Nathaniel Guy violated the respect policy on
> 5/22/07 by directing obscene and abusive language toward several associates. Guy
> is aware that he is expected to speak to associates in a professional, non-abusive, and
> non-threatening manner based on a previous violation of the respect policy that
> occurred on 11/4/06.[5]

> This behavior will result in termination.

(*Id.* ¶ 59.) Like Kohut, Guy was terminated by Urso on June 8, 2007. (*Id.* ¶ 58.)

## LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "There is no genuine issue of material fact when no reasonable jury could find

in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915

(7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the

facts before it in the light most favorable to the nonmoving party, drawing all reasonable

inferences in the nonmoving party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752

(7th Cir. 2010). The court does not make credibility determinations or weigh conflicting

evidence. *Id.* Summary judgment will be granted in favor of the moving party if there are no

---

[4] The record contains no information regarding whether Esposito also reviewed the
decision to terminate Guy.

[5] Guy's November 4, 2006 violation was for "using offensive language toward
Associates." (Home Depot's SMF ¶ 47.)

genuine disputes as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

As the plaintiff, Kohut bears the ultimate burden of proving that he was discriminated against because of his age or race. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009) (ADEA) (plaintiff must prove that "age was the 'but for' cause of the challenged adverse employment action") (relying on 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age.")); *see also* 42 U.S.C. § 2000e-2(a) (Title VII) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race.").[6]

At the summary judgment stage, courts in the Seventh Circuit "apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009).[7] Accordingly, Kohut can present his claims using either the direct method of proof or the indirect method of proof. *Id.*

_____

[6] Kohut does not pursue a "mixed motive" theory of liability in this case. *Cf. Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (analyzing 42 U.S.C. § 2000e-2(m))

[7] In *Gross*, the Supreme Court cautioned that Title VII decisions "do not control our construction of the ADEA." *Gross*, 129 S. Ct. at 2348. However, in the wake of *Gross*, the Seventh Circuit has continued to apply the *McDonnell Douglas* burden-shifting approach first utilized in Title VII cases to claims brought under the ADEA. *See, e.g.,Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010) (noting that *McDonnell Douglas* "has a broader domain of applicability" than the *Price Waterhouse* burden-shifting rule at issue in *Gross*); *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009) ("[a] plaintiff suing under the ADEA may show discrimination directly or indirectly, in the latter instance through the approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [(1973)]").

Under the direct method of proof, Kohut may rely on either "direct" evidence or "circumstantial" evidence to demonstrate a genuine dispute of material fact "as to whether discrimination motivated [Home Depot's decision to terminate his employment]." *Id.* Direct evidence "usually requires an admission from the decisionmaker about his discriminatory animus, which is rare indeed." *Id.* Circumstantial evidence "suggests discrimination through a longer chain of inferences," *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (citation omitted), and includes such evidence as "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Nagle*, 554 F.3d at 114-15 (quoting *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007)).[8]

The indirect method of proof requires Kohut to establish a prima facie case of discrimination by demonstrating that (1) he is a member of a protected class; (2) he was meeting Home Depot's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) Home Depot treated a similarly situated individual outside Kohut's protected

_____

[8] The Seventh Circuit has noted that the third category of circumstantial evidence "is substantially the same as the evidence required under the indirect method." *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 601 (7th Cir. 2003) (internal quotation marks and citation omitted). Accordingly, Kohut's argument that Home Depot treated Guy, a younger, non-Caucasian employee more favorably is analyzed under the indirect method of proof. *Compare Van Antwerp v. City of Peoria*, __ F.3d __, No. 10-2455, 2010 WL 4923560, at *3 (7th Cir. Dec. 6, 2010) (suggesting that third category of circumstantial evidence is, by itself, insufficient to withstand summary judgment without "some minimal showing that the 'real reason' for cancelling [plaintiff's] transfer was based on age").

class more favorably.  *Nagle*, 554 F.3d at 1119.  Regarding Kohut's claim of race discrimination, "where members of the majority group believe that they have been subjected to discrimination, rather than showing that they are members of a protected class, they must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand."  *Id.* (internal quotations marks and citations omitted).  Once Kohut has established a prima facie case of discrimination, the burden shifts to Home Depot to identify "a legitimate, nondiscriminatory reason for the termination."  *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009).  Kohut then bears the burden of demonstrating that Home Depot's proffered reason was a pretext for discrimination.  *Id.*

ANALYSIS

1.    Direct Method of Proof

Home Depot argues at the outset that Kohut can produce "absolutely no direct evidence" of race or age discrimination in this case, relying on Kohut's testimony that Urso never made any negative comments about Kohut's age or race.  (Dkt. No. 33 ("Home Depot's Mem.") at 9, 14 (citing Home Depot's SMF ¶ 49).)  In response, Kohut argues that both race and age discrimination can be reasonably inferred from Home Depot's failure to follow its own disciplinary policies.  The court disagrees.

Kohut is generally correct that a plaintiff can "prevail under the direct method of proof by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  (Dkt. No. 37 ("Kohut's Resp.") at 6 (quoting *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006)).)  However, Kohut has not set forth a

"convincing mosaic" in this case. It is Kohut's position that discrimination can be reasonably inferred merely from the fact that Home Depot failed to follow its own disciplinary policies. Unfortunately, none of the cases cited by Kohut directly supports this assertion, as each case applies the *indirect* method of proof. *See Berube v. Great Atl. & Pac. Tea Co.*, 348 F. App'x 684 (2d Cir. 2009); *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379 (5th Cir. 2002); *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220 (10th Cir. 2000); *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018 (8th Cir. 1998); *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21 (1st Cir. 1998). Moreover, even assuming that an employer's failure to follow its own policies can constitute circumstantial evidence of discrimination under appropriate circumstances, there is no evidence suggesting that Home Depot deviated from its established policies in this case.

Kohut first argues that "Caucasian witnesses were not interviewed by management even though required by standard policy." (Kohut's Resp. at 7.) However, nothing in Home Depot's written policies required Reynolds to interview all witnesses to the May 17, 2007 incident. The relevant section of the Code of Conduct includes "guidelines" for all managers, aimed at "[c]onduct[ing] a thorough investigation . . . so that the final outcome is based upon facts and not perception, hearsay, or speculation." (Code of Conduct 26-27.) Per Home Depot's guidelines, Kohut was given "an opportunity to tell his [ ] side of the situation" in a "detailed witness statement." (*Id.* at 27.) Kohut admitted in his written statement that he "call[ed] whoever it was that pushed that cart back there a fucking idiot." (Home Depot's Ex. 8.) While Kohut also stated "I don't believe I directed that remark at any particular person" (*id.*), two other witnesses told Reynolds that Kohut directed his remark to McKenzie (Home Depot's SMF ¶ 38). Under Home Depot's written policies, Reynolds had the discretion to determine at what point the

investigation was sufficiently "thorough." (Code of Conduct 27.) Even if Reynolds concluded her investigation without conducting any further interviews,[9] thereafter rejecting Kohut's representation that he did not direct his statement to McKenzie, it was not a violation of Home Depot's written policies for her to do so.

Kohut further argues that "Plaintiff was not accorded the required notice prior to his termination as required by company policy." (Kohut's Resp. at 7.) However, Home Depot's policies do not entitle Kohut to written notice prior to his termination. The Code of Conduct expressly states in its opening pages, "*The employment relationship may be terminated with or without cause and with or without prior notice*." (Code of Conduct 3 (emphasis in original).) This information is repeated again in the Manager's Guide section, which states "*the Company is likewise free to terminate its relationship with the associate at any time with or without cause and without notice.*" (*Id.* at 29 (emphasis in original).) Accordingly, Home Depot was under no obligation to afford Kohut notice prior to his termination per the policies set forth in its Code of Conduct.

Finally, the court rejects Kohut's argument that Home Depot failed to follow its own progressive discipline policy. The Code of Conduct sets forth a "progressive disciplinary

---

[9] The parties dispute whether Reynolds attempted to interview the other witnesses named by Kohut, including Mark Lebeau, Doreena Babiceau, and Erlene Bynham. (*See* Kohut's Add'l Facts ¶ 87; Home Depot's Resp. to Kohut's Add'l Facts ¶ 87.) Kohut has produced no admissible evidence to support his allegation that Reynolds's investigation was incomplete or that she in fact made no attempt to interview these witnesses. Because "summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact," *United States v. 5443 Suffield Terrace*, 607 F.3d 504, 510 (7th Cir. 2010), Kohut's argument on this point also fails for lack of support in the record.

process"[10] that consists of "four different steps," including "Coaching," "Counseling," "Final Counseling," and "Termination." (*Id.* at 32-33.) However, the Code of Conduct also specifically states, "Depending on the circumstances, any step in the process may be repeated, omitted or taken out of sequence." (*Id.* at 32.) Under its "Discipline Guidelines," the Code of Conduct notes, "The Company reserves the right to take disciplinary action at any time up to and including termination of employment based on the Company's employment-at-will policy." (*Id.* at 29.) The evidence in the record therefore does not support Kohut's argument that Home Depot was obligated to provide him with progressive disciplinary measures pursuant to its own Code of Conduct.

For the sake of completeness, the court notes that even if Kohut could prove that Home Depot had violated its own employment policies (which he has not), Kohut still fails to make "some minimal showing that the 'real reason' for [his termination] was based on age [or race]." *Van Antwerp*, 2010 WL 4923560, at *3. For all of these reasons, Kohut has failed to establish a viable discrimination claim under the direct method of proof.

2.    Indirect Method of Proof

As set forth above, under the indirect method of proof Kohut bears the initial burden of proving that (1) he is a member of a protected class; (2) he was meeting Home Depot's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) Home Depot treated a similarly situated individual outside Kohut's protected class more

---

[10] Neither of the parties have included Home Depot's "progressive disciplinary process" in their Local Rule 56.1 statements. However, both parties have relied on the Code of Conduct as a general representation of Home Depot's written policies, and there is no dispute as to the Code of Conduct's authenticity. Accordingly, the court will consider Kohut's argument on this point, relying on Home Depot's Ex. 4 and Kohut's Ex. E for evidentiary support.

favorably. *Nagle*, 554 F.3d at 1119. As a member of a racial majority, Kohut must also show "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Id.* (quoting *Phelan v. City of Chi.*, 347 F.3d 679, 684 (7th Cir. 2003) (internal quotation marks omitted)).

It is undisputed that Kohut suffered an adverse employment action when he was terminated on June 8, 2007, thereby satisfying the third element of his prima facie case. It is also undisputed that Kohut is a member of a protected class for purposes of his ADEA claim, insofar as he was 59 years old at the time of his termination. *See Martino*, 574 F.3d at 452 ("The [ADEA] prohibits employers from firing workers who are 40 or older on the basis of their age.") (citing 29 U.S.C. §§ 623(a)(1), 631(a)).

With regard to Kohut's claim of race discrimination, Home Depot argues that Kohut "cannot establish the first element of the prima facie case because he has no evidence of the background circumstances necessary to establish that Home Depot 'is the unusual employer who discriminates against majority employees.'" (Home Depot's Mem. at 10 (quoting *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 456-57 (7th Cir. 1999) (emphasis omitted)).) Kohut does not respond to this argument, instead merely stating that he "belongs to a protected group" and generally arguing that "the facts and inferences must be construed in favor of Plaintiff." (Kohut's Resp. at 8.) This is not the correct standard. The Seventh Circuit requires non-minority (Caucasian) plaintiffs to show "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something "fishy" about the facts at hand." *Nagle*, 554 F.3d at 1119; *see*

*also Mills*, 171 F.3d at 455. Such evidence can include a pattern of favoring non-Caucasians in hiring and promotion decisions. *Mills*, 171 F.3d at 457. Without elaboration or explanation, Kohut notes elsewhere in his response "[a]n interesting aspect of the instant case is that the decision makers and witnesses against Plaintiff, a Caucasian, were non Caucasians." (Kohut's Resp. at 7.) This statement is not persuasive and is not supported by the record. Although it is undisputed that Urso is Hispanic and that McKenzie and Hayes are not Caucasian (Kohut's Add'l Facts ¶¶ 85-86), the record includes no information about the racial identity of Reynolds, Wong, George, Gonzalez, Benja, or Esposito, nor does it include any information about the hiring and promotional practices of Home Depot in general. On this scant record, the court finds Kohut has failed to carry his burden of demonstrating that Home Depot has an "inclination to discriminate invidiously against whites." *Mills*, 171 F.3d at 455.

Home Depot also argues that Kohut cannot establish that he was performing his job satisfactorily, insofar as he "committed a Major Violation of the Code of Conduct's Respect Policy when he called McKenzie a 'fucking idiot.'" (Home Depot's Mem. at 10.) In response, Kohut argues that his promotions in 1999 and 2001 demonstrate that he was performing his job in a satisfactory manner. "When considering whether an employee is meeting an employer's legitimate expectations, this court looks to whether she was performing adequately *at the time of the adverse employment action*." *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009) (emphasis added). Kohut has submitted no evidence regarding his performance as a whole in May 2007; however, it is undisputed that Kohut violated Home Depot's Code of Conduct when he called McKenzie a "fucking idiot" on May 17, 2007. Whether this violation was "major" or "minor" is

irrelevant,[11] as the Code of Conduct states that "Any associate who violates a rule of conduct may be disciplined up to and including termination of employment."  (Code of Conduct 3.) Because Kohut violated Home Depot's Code of Conduct in May 2007, he cannot demonstrate that he was meeting Home Depot's legitimate expectations at the time of his termination.

Finally, Home Depot argues that Kohut cannot prove that a similarly situated individual outside of Kohut's protected class was treated more favorably.  Acknowledging that Guy is "a similarly situated non-Caucasian" Assistant Store Manager,[12] Home Depot stresses that Guy was terminated by Urso "for engaging in the exact same conduct as Plaintiff."  (Home Depot's Mem. at 11.)  In response, Kohut argues that Guy was treated more favorably than Kohut, because he was "allowed to remain employed after a respect violation and a major violation and was only terminated after admitting to a second respect rule violation and a Major violation."  (Kohut's Resp. at 8.)  It is undisputed that Guy was disciplined in May 2006 for a violation of the Respect

---

[11] Citing the "Respect Violation" section of the Code of Conduct, Kohut asserts "[n]o accusation was made that Plaintiff engaged in conduct that was other than what the handbook would classify as a minor violation."  (Kohut's Add'l Facts ¶ 91.)  In other words, it is Kohut's position that his conduct in May 2007 could not, and did not, qualify as a Major Work Rule Violation under the Code of Conduct.  Home Depot disputes this assertion, noting that the language set forth in Kohut's Termination Discipline Notice (stating that Kohut "direct[ed] obscene language toward an associate") tracks the language set forth in the "Discrimination or Harassment" section of the Code of Conduct (prohibiting "directing abusive or obscene language to fellow associates").  (Home Depot's Resp. to Kohut's Add'l Facts ¶ 91.)  Home Depot further notes that, although the "Respect" checkbox was marked on Kohut's Termination Discipline Notice, "there is no 'Discrimination/Harassment' box to check on the form."  (*Id.*)  Regardless of whether Kohut committed a "Respect Violation" or engaged in conduct that could be described as "Discrimination or Harassment" under the Code of Conduct, it is undisputed that Urso classified Kohut's conduct in May 2007 as a Major Work Rule Violation.  (Kohut's Add'l Facts ¶ 92.)

[12] It is also undisputed that Guy is more than 10 years younger than Kohut.  (*See* Home Depot's SMF ¶¶ 3, 44.)

Policy, and was again disciplined in November 2006 for a violation of the Harassment Policy.[13]

(Kohut's Add'l Facts ¶ 95.) However, the only information in the record regarding Guy's

conduct on those two occasions is that, in November 2006, he "us[ed] offensive language toward

Associates." (Home Depot's SMF ¶ 47.) Without more, the court is not in a position to evaluate

how Guy's conduct in 2006 compared to Kohut's conduct in 2006 and 2007, and the court can

only speculate that Guy was given a second chance under circumstances that Kohut was not. *See*

*Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) ("our favor toward the

nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation

or conjecture'") (citation omitted). Moreover, additional information in the record regarding

Guy's previous disciplinary warnings suggests that Guy and Kohut were not similarly situated

with regard to their disciplinary pasts. In its reply, Home Depot notes that Urso was not the

Store Manager of the Elston Store in May 2006, that she did not issue Guy's May 2006 Final

Counseling Discipline Notice, and that she "could not find the underlying investigation file"

regarding the May 2006 incident when it came time to discipline Guy in November 2006. (Dkt.

No. 39 ("Home Depot's Reply") at 9 (citing Home Depot's Ex. 13); *see also* Home Depot's

Resp. to Kohut's Add'l Facts ¶ 95.) Urso therefore decided to "start[ ] Guy with a clean slate

when she arrived at the Store in July 2006," a decision that was retroactively supported by

Gonzalez. (*Id.* (citing Home Depot's Ex. 19).) Because Kohut did not receive a Final

Counseling Discipline Notice prior to Urso's appointment as Store Manager, there was no

opportunity for Urso to grant (or deny) Kohut the same "second chance" that Guy was afforded.

_____

[13] It is immaterial to the court's analysis whether Guy actually received a Final
Counseling Discipline Notice regarding his November 2006 conduct, as addressed by statements
set forth in Guy's notarized but unsworn affidavit. (Kohut's Ex. A.)

What is clear from the record is that Kohut and Guy were both terminated for "directing obscene language toward an associate" (Kohut) / "directing obscene and abusive language toward several associates" (Guy), after having committed "a previous violation of the respect policy" under Urso's watch. (*Compare* Home Depot's Exs. 10, 12.) Taken as a whole, the record before the court does not suggest that Guy was treated more favorably than Kohut.

For all of the reasons set forth above, Kohut has failed to set forth a prima facie case of discrimination and cannot establish a viable discrimination claim under the indirect method of proof.

CONCLUSION

Because plaintiff Robert W. Kohut has failed to support his Title VII and ADEA claims against defendant Home Depot U.S.A., Inc. under either the direct method of proof or the indirect method of proof, Home Depot's motion for summary judgment (Dkt. No. 32) is granted and judgment is entered in favor of Home Depot on both claims.

ENTER:

*James F. Holderman*
_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: December 16, 2010